HULBERT MOULTON and another *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

### August 2, 1883.

**Common Carrier of Live-Stock—Railroad.**—A railroad corporation, which undertakes to transport live-stock for hire for such persons as choose to employ it, assumes the relation of a common carrier, with such modifications of the common-law liability of carriers as arise from the nature of the animals, and their capacity for inflicting injury upon themselves and upon each other. The liability of the carrier for his own negligence is not modified by the facts that the bailment relates to live-stock, or that, by agreement, the owner accompanies the property, and exercises care respecting it during the transportation.

**Same—Cannot Limit, in Whole or in Part, Liability for Negligence.**— The rule of law that a common carrier of property cannot, by contract, relieve himself from liability for his own negligence, is applicable to the carrier of live-stock as well as of inanimate property. Neither by an arbitrary agreement, limiting the measure of damages, can the carrier be discharged from a *part* of the liability for his own negligence which the law imposes.

**Same—Contract limiting Liability to Wilful Negligence, and Specific Sum.**—By the terms of a contract for the transportation of a car-load of horses, the defendant was discharged from any liability for any cause, excepting the wilful negligence of its agents. By other terms of the contract, it was agreed that, in case of total loss, the damage should in no case exceed the sum of $100 per head. Contract construed as, in effect, an agreement for absolute exemption from liability, except for wilful negligence; and, in case such contract of exemption should not be sustained, then that the liability of the defendant should be limited to the sum named. *Held*, not valid, as exempting the defendant, in whole or in part, from liability for its own negligence, to the extent of the value of the property.

Appeal by defendant from an order of the district court for Ramsey county, refusing a new trial, after a trial before *Brill*, J., and a jury, resulting in a verdict for $400 in favor of plaintiffs.

*R. B. Galusha* and *J. Kling*, for appellant.

The carrier of live-stock is not subject to the stringent common-law liability of an ordinary common carrier. Hutchinson on Carriers, §§ 217–240; *Michigan South., etc., R. Co.* v. *McDonough*, 21 Mich. 165; *Lake Shore, etc., R. Co.* v. *Perkins*, 25 Mich. 329.

The contract limiting defendant's liability is valid. *South, etc., R. Co.* v. *Henlein*, 52 Ala. 606; *Christensen* v. *Am. Exp. Co.*, 15 Minn. 208, (270;) *Shriver* v. *Sioux City & St. P. R. Co.*, 24 Minn. 506; *Harvey* v. *Terre Haute, etc., R. Co.*, 6 Am. & Eng. R. Cas. 293; *Hart* v. *Pa. R. Co.*, 7 Fed. Rep. 630.

*Hiler H. Horton* and *Henry Burleigh Wenzell*, for respondents.

DICKINSON, J. The plaintiffs shipped two car-loads of horses at St. Paul, over defendant's line of road, to points in Dakota. Two of the horses died by reason of prolonged exposure to cold weather, as is claimed, caused by defendant's negligent detention of the train during transportation. The action is for the recovery of the value of these two horses, which appears to have been $200 each. For the purposes of this appeal, we are to consider the negligence of the defendant as established, and are to determine whether the defendant is liable for its negligence, and the measure or extent of its liability under the contract made by the parties.

The contract under which the property was shipped, and which was executed by both plaintiffs and defendant, contained the provisions that in consideration that the defendant would transport the property at the rate of $75 per car-load, "the same being a rate given, subject to the conditions of this contract," the plaintiffs released the defendant from the liability of a common carrier, and from any liability for any delay in shipping the stock after its delivery to the defendant, and agreed that the liability of the defendant should be only that of a private carrier for hire. The plaintiffs contracted to assume all risk of damage which might be sustained by reason of any delay in transportation, and all risk of damage from any other cause, not resulting from the wilful negligence of the agents of the defendant. It was further agreed that, in case of total loss, the damage should in no case exceed the sum of $100 per head, and, in case of partial loss, damage should be measured in the same proportion. A printed "regulation" of the defendant, attached to the contract, provided that the defendant would not assume any liability over $100 per head on horses and valuable live-stock, except by special agreement. By the contract of the parties the owner of the horses attended and cared for them upon the passage, without extra charge for his own transportation.

A railroad company which undertakes to transport live-stock for hire, for such persons as choose to employ it, assumes the relation of a common carrier, and becomes chargeable with the duties and obligations which are incident to that relation. *Kimball* v. *Rutland & B. R. Co.*, 26 Vt. 247; *Rixford* v. *Smith*, 52 N. H. 355; *Clarke* v. *Rochester & S. R. Co.*, 14 N. Y. 570; *Evans* v. *Fitchburg R. Co.*, 111 Mass. 142; *St. Louis & S. E. Ry. Co.* v. *Dorman*, 72 Ill. 504; *Powell* v. *Pennsylvania R. Co.*, 32 Pa. St. 414; *Great Western Ry. Co.* v. *Hawkins*, 18 Mich. 427, 433.

By this it is not meant that the carrier is an insurer of the property as respects injury which it may suffer from all causes. Such a liability does not exist without qualification as to personal property generally in the hands of a carrier. He is not, for instance, an insurer in respect to any injury unavoidably resulting from the essential nature of the property itself, such as the natural decay of fruit,

although he should use reasonable care for its preservation. For like reasons as those upon which rest the exceptions to the absolute obligation of the carrier, as respects property generally, it is undoubtedly true that the ordinary common-law liability of the carrier is subject to some modifications arising from the nature and propensities of the animals, and their capacity for inflicting injuries upon themselves and upon each other, when live-stock is the subject of transportation. What may be the nature and extent of such modifications we have no occasion now to consider. For our present purposes it is enough to say that cases where the injury is the result of want of ordinary care on the part of the carrier are not within the exceptions to the rule. See cases above cited.

The recovery in this case rests alone upon the neglect of the defendant to transport the horses to their destination within a reasonable time, whereby, from exhaustion and exposure to cold, they died. The law has been determined in this state, and in most of the United States, as well as in the federal supreme court, to be that a common carrier of goods cannot by contract relieve himself from liability for his own negligence. *Christenson* v. *Am. Exp. Co.*, 15 Minn. 208, (270;) *Shriver* v. *Sioux City & St. P. R. Co.*, 24 Minn. 506; *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Bank of Kentucky* v. *Adams Exp. Co.*, 93 U. S. 174. Nor is there any reason why a different rule should prevail in respect to the transportation of live-stock, or of property under the care of the owner. The rule itself rests upon considerations of public policy, and upon the fact that to allow the carrier to absolve himself from the duty of exercising care and fidelity is inconsistent with the very nature of his undertaking. These reasons apply with undiminished force where the property is live-stock, or is under the care of the owner, who has not the direction or control of the agencies and the operation of the transportation. To whatever extent such facts might modify or affect the liability of the carrier for accidents, or for injuries not the result of his own negligence, they would not qualify his responsibility for his own neglect of duty. The agreement discharging the defendant from the liability of a common carrier cannot avail to divest the carrier of his real character, nor indirectly relieve him from responsibilities from which he cannot directly

by contract free himself. *Christenson* v. *Am. Exp. Co., supra; Bank of Kentucky* v. *Adams Exp. Co., supra.*

Our conclusion, therefore, is that the defendant was responsible in damages for its negligence, notwithstanding the contract.

The same reasons which forbid that a common carrer should, even by express contract, be absolved from liability for his own negligence, stand also in the way of any arbitrary preadjustment of the measure of damages, where the carrier is *partially* relieved from such liability. It would indeed be absurd to say that the requirement of the law as to such responsibility of the carrier is absolute, and cannot be laid aside, even by the agreement of the parties, but that one-half or three-fourths of this burden, which the law compels the carrier to bear, may be laid aside, by means of a contract limiting the recovery of damages to one-half or one-fourth of the known value of the property. This would be mere evasion, which would not be tolerated. Yet there is no reason why the contracting parties may not in good faith agree upon the value of the property presented for transportation, or fairly liquidate the damages recoverable in accordance with the supposed value. Such an agreement would not be an abrogation of the requirements of the law, but only the application of the law as it is by the parties themselves to the circumstances of the particular case. But that the requirements of the law be not evaded, and its purposes frustrated, contracts of this kind should be closely scrutinized.

Upon the face of the contract under consideration, it is apparent that it was not the purpose of the parties to liquidate the damages recoverable, with reference to the value of the property consigned to the carrier. Its provisions are somewhat contradictory, and not easily reconciled. The general regulation attached to the contract, to the effect that the company "will not assume any liability over one hundred dollars per head on horses and valuable live-stock except by special agreement," is plainly opposed to the law as established, so far as regards the negligence of the carrier. As a regulation it is, therefore, of no effect. The law declares that the carrier shall be liable to the extent of the value of the property, although there be no special agreement. We do not question the right of a carrier to require the disclosure, by the consignor, of the value of the property

presented for transportation, where its value is not apparent and well known. This is reasonable, both to the end that proper care may be taken of the property while it is in the hands of the carrier, and because the proper charges for transportation may often depend largely upon value. We see nothing, however, in this contract which can be regarded as having been intended as calling for such a disclosure on the part of the plaintiffs, or as estopping them from claiming a recovery, upon the ground of the carrier's negligence, of the actual value of the horses. In terms, the contract purports to relieve the defendant from liability, even for its own negligence, and, at the same time, if a recovery shall be had notwithstanding this agreement, then the amount of such recovery is limited to the sum of $100 per head. These stipulations cannot naturally be applied to a case involving as the cause of action the negligence of the carrier, without making them, in effect, to be an agreement in the first place for absolute exemption from liability, (except for wilful negligence;) and if, notwithstanding the agreed exemption, a recovery should be awarded, it shall not exceed the sum named; that is to say, (as applied to a case of negligence,) it is, in effect, an agreement for absolute exemption, and, that failing to be sustained, then for a partial exemption, from the liability which the law imposes in such cases, and which cannot be laid aside by the mere consent of parties. Such a contract cannot be sustained.

Order affirmed.